J-A14045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: O.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C.M., FATHER | : | |
| | : | No. 3197 EDA 2024 |

Appeal from the Order Entered October 31, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000321-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: O.Y.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C.M., FATHER | : | |
| | : | No. 3198 EDA 2024 |

Appeal from the Decree Entered October 31, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000253-2024

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                   **FILED JUNE 3, 2025**

K.C.M. (Father) appeals from the decree, entered October 31, 2024, which granted the petition of the Philadelphia Department of Human Services (DHS) and involuntarily terminated his parental rights to his child, O.Y.M., aka O.M., (Child) (Born 03/2010). Father further appeals from the October 31,

_____

[*] Retired Senior Judge assigned to the Superior Court.

2024 order changing Child's permanency goal to adoption. Father's appellate counsel, James W. Martin, Esquire, has filed a petition to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981).[1] We grant counsel's petition to withdraw and affirm.

Briefly, DHS obtained protective custody of then twelve-year-old Child in July 2022,[2] after V.J. (Mother) voluntarily relinquished custody. Father has been incarcerated for, *inter alia*, robbery, assault, violations of the Uniform Firearms Act of 1995, harassment, and recklessly endangering another person from the time that Child was one year old. Father's minimum release date is in April 2027, and his maximum release date is in January 2043.[3] Tragically, on September 18, 2022, Mother died. After an initial placement on August 15, 2023, the court committed Child to DHS and placed Child with J.B. (Godmother).

_____

[1] *See In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending *Anders* briefing requirements to termination of parental rights appeals involving indigent parents represented by court-appointed counsel); *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (same).

[2] DHS has been involved in Child's case since October 25, 2021, for reports of in-home conflict and disciplinary issues.

[3] Father pleaded guilty to additional crimes of violence that he committed while in prison and was sentenced to an incarceration term consecutive to his original sentence, which is included in his stated minimum and maximum incarceration dates. *See* N.T. Termination Hearing, 10/31/24, at 34, 52-54.

Through the life of this case, DHS established a single case plan for Father, and Father participated in previous dependency proceedings. Nevertheless, Father refused to participate in the termination of parental rights and permanency goal-change hearing[4] held by the court on October 31, 2024, wherein the court determined that it was in Child's best interest to terminate Father's parental rights, pursuant 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b) of the Adoption Act[5] and further determined that it was in Child's best interest to be adopted by Godmother.

At the termination hearing, DHS presented the testimony of the Community Umbrella Agency Case Manager Anajah Custus and Godmother. Case Manager Custus testified that Child is doing well in Godmother's care and has an overall positive bond with her. **See** N.T. Termination Hearing, 10/31/24, at 25-26. Case Manager Custus also testified that Godmother and Child's relationship is like that generally shared by a parent and child because Godmother takes care of Child's daily needs, emotional support, and medical care, and is responsible for ensuring Child attends school. **See id.** at 26-27. Case Manager Custus similarly testified that Child trusts Godmother, jokes

---

[4] At the termination hearing, Blake Mammuth, Esquire, represented Child's best interests, and Charles A. Rosenbaum, Esquire, represented Child's legal interests. **See** 23 Pa.C.S. § 2313(a); **but see In Re: T.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[5] 23 Pa.C.S. §§ 2101-2938.

with her, confides in her, talks to her about school, and talks to her about the passing of Child's mother. *See id.* at 32. Conversely, Case Manager Custus noted that Child's relationship with Father was complicated insofar as Child and Father engaged in weekly contact but Child did not always want to engage Father in conversation. *See id.* at 27. Moreover, Case Manager Custus testified that Father and Child were no longer in contact because Father threatened to have Child killed during an argument they had over the phone, which occurred just a few weeks prior to the termination hearing. *See id.* at 27-28, 40. Case Manager Custus noted that Child and Father have a history of threatening each other, that Child does not look to Father to satisfy any of Child's needs, and Child does not see Father as occupying a parental role. *See id.* at 28-29. Case Manager Custus testified that Child would not suffer irreparable harm if Father's parental rights were terminated, that it was Child's desire to be adopted by Godmother,[6] and that Child would be harmed if removed from Godmother's care. *See id.* at 29, 31-32. Moreover, although Case Manager Custus agreed that Father was compliant with his plan, she noted that Father failed to make progress toward completing his objectives and testified that Father was ruled out as a reunification resource because he threatened Child's life, continued to display the behaviors that initially got him

---

[6] It is clear from the trial Court's Exhibit B, consisting of Child's *in camera* testimony, that Child, who was fourteen years old at the time of the hearing, understood the difference between adoption and permanent legal custody. *See* N.T. *In Camera* Hearing, 4/22/25, at 9-10.

incarcerated,[7] including harassment, aggressiveness, and physical violence, failed to show proof of employment or housing, and would need to show engagement in therapy and enrollment in parenting classes. *See id.* at 30-31, 34, 36.

Godmother testified at the hearing that she and Child have a great relationship, are very close, and that she would like to adopt Child. *See id.* at 38-39. Similarly, Child testified to preferring termination of Father's parental rights along with a goal-change to adoption by Godmother. *See id.* at 48; *see also* N.T. *In Camera* Hearing, 4/22/25, at 9-10.

Also, at the conclusion of the hearing, DHS proffered, without objection, that Child's mental health evaluator, Ms. Rodriguez,[8] would have testified that she has known Child for the life of the case and in her opinion, Child's adoption by Godmother is in Child's best interest because Ms. Rodriguez has observed positive change and growth in Child, and Child has confirmed to her that adoption is the desired outcome. *See* N.T. Termination Hearing, 10/31/24, at 43-44.

By decree dated and entered on October 31, 2024, the trial court involuntarily terminated Father's parental rights to Child. By separate order

---

[7] As noted in fn. 3, *supra*, while incarcerated for his original crimes, Father pleaded guilty to additional crimes of violence for fighting another inmate. *See* N.T. Termination Hearing, 10/31/24, at 34.

[8] Ms. Rodriguez's first name is not of record.

dated and entered that same day, the court also changed Child's permanency goal from reunification to adoption.

On November 29, 2024, Father filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). This Court later consolidated Father's appeals *sua sponte*. **See** Pa.R.A.P. 513. The trial court filed a responsive Rule 1925(a) opinion. Thereafter, Attorney Martin filed an application to withdraw his representation in this Court, as well as an **Anders** brief. Father did not respond to Attorney Martin's **Anders** brief and has not retained private counsel.

On appeal, Attorney Martin's **Anders** brief raises the following issues for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights, under 23 Pa. C.S.[ §] 2511(a)(1), (2) & (5)[?]

2. Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights, and changed [C]hild's goal to adoption pursuant to 23 Pa. C.S.[ §] 2511(b), when DHS failed to prove by clear and convincing evidence that involuntarily terminating Father's parental rights best served [Child's] needs and welfare[?]

**Anders** Brief, at 6.

When counsel seeks to withdraw pursuant to **Anders** and its progeny, this Court may not review the appeal's merits prior to addressing counsel's request to withdraw. **See In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020).

In **In re V.E.**, our Court stated:

[C]ounsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this [C]ourt for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, [this Court] hold[s] that appointed counsel seeking to withdraw representation must submit an *advocate's* brief, as contemplated in **Anders**[.]

**Id.** at 1275 (emphasis in original). Moreover, we have held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an *advocate's brief*, and not the *amicus curiae* brief delineated in **McClendon**." **Id.** (emphasis in original); **see also In re Adoption of R.I.**, 312 A.2d 601, 602 (Pa. 1973) ("logic behind" criminal defendant's entitlement to representation by counsel at any proceeding that may lead to deprivation of substantial rights "is equally applicable" to case involving indigent parent faced with loss of child).

To withdraw, counsel must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citations omitted); **see also In re Adoption of V.G.**, 751 A.2d 1174,

1176 (Pa. Super. 2000) (reiterating requirements counsel must satisfy for grant of permission to withdraw in termination appeals).

With respect to the third **Anders** requirement, that counsel inform the appellant of his or her rights considering counsel's attempt to withdraw, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to [the] client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005). An **Anders** brief must also comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, our review of Attorney Martin's **Anders** brief and application to withdraw reveals that counsel has complied with each of the technical requirements of **Anders** and **Santiago**. Attorney Martin states he has

conducted a conscientious examination of the record, determined that further pursuit of a direct appeal would be frivolous, and furnished a copy of the letter sent to Father advising him of his right to proceed *pro se* or raise issues in response to the brief. ***See V.G.***, 751 A.2d at 1176. Additionally, Attorney Martin's ***Anders*** brief complies with the requirements of ***Santiago***. ***See Santiago***, 978 A.2d at 361. Accordingly, we conclude that Attorney Martin has complied with the requirements for withdrawing from representation and we proceed to an independent review of the merits. ***See Flowers***, 113 A.3d at 1250.

Father's first issue on appeal challenges the trial court's termination of his parental rights to Child. Our Supreme Court has set forth the well-settled standard of review in termination of parental rights cases as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations, brackets, and quotation marks omitted).

It is also well-settled that termination of parental rights requires clear and convincing evidence, based on the totality of the circumstances, which is evaluated on a case-by-case basis:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well[-]established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citations and quotation marks omitted).

Termination of parental rights is governed by Sections 2511(a) and (b) of the Adoption Act. *See* 23 Pa.C.S. § 2511(a), (b). We need only agree with the trial court as to any one subsection enumerated at Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached.[9] *See In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

---

[9] Contrary to the trial court's finding, termination under Subsection 2511(a)(5) is inappropriate in this case because Child was never removed from Father's care. *See In the Int. of R.H.B.*, 327 A.3d 1251, 1260 (Pa. Super. 2024), citing *C.S.*, 761 A.2d at 1201 n.5.

Here, we conclude that DHS established termination of Father's parental rights to Child by clear and convincing evidence, pursuant to Subsection 2511(a)(2). *See In re S.M.*, 816 A.2d at 1122.

Accordingly, the relevant statutory basis for involuntary termination in this case is as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> **(2)** The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. [. . .]

23 Pa.C.S. § 2511(a)(2) and (b).

> In order to satisfy S[ubs]ection 2511(a)(2), the petitioning party must establish: (1) repeated and continued incapacity, abuse, neglect[,] or refusal; (2) that such incapacity, abuse, neglect[,] or refusal caused the child to be without essential parental care, control[,] or subsistence; and (3) that the causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied. Grounds for termination pursuant to [Sub]section 2511(a)(2), however, are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

- 11 -

*In the Int. of Z.N.B.*, 327 A.3d 241, 249 (Pa. Super. 2024) (citations and quotation marks omitted). Moreover,

> [w]e have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. Furthermore, incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [Subsection] 2511(a)(2), where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care. Pertinently, the length of the remaining confinement can be considered as highly relevant.

*R.H.B.*, 327 A.3d at 1270 (citations, quotation marks, and brackets omitted). Nevertheless, parental rights may not be terminated solely on grounds that the parent is incarcerated. *See In re R.I.S.*, 36 A.3d 567, 572 (Pa. 2011).

Here, at the conclusion of the termination hearing, the court relied on the following factors in terminating Father's parental rights to Child: (1) in the six months prior to DHS' filing for termination and a permanency goal change, Father failed to perform any parental duties, *see* N.T. Termination Hearing, 10/31/24, at 60; (2) Father failed to maintain a parent-child relationship with Child throughout the life of the case, *see id.*; (3) Father failed to take advantage of the options available to him while incarcerated, including his refused participation in the termination hearing, *see id.* at 61; (4) Child has been without essential parental care or control or subsistence for the life of the case, *see id.*; (5) Father has been incarcerated since Child was one year old and has only minimally been in Child's life, *see id.* at 62; (6) Father has not learned from or changed his behavior, despite voluntarily enrolling in parenting and anger management classes, as evidenced by his

- 12 -

recent threat against Child's life and Father's violent behavior while incarcerated, *see id.*; (7) Father has failed to take advantage of the reasonable time afforded to him to remedy his situation, *see id.* at 63; (8) termination of Father's parental rights would best serve Child's needs and welfare, as evidenced, *inter alia*, by Child's own desires, *see id.*; (9) Child has a positive relationship and bond with Godmother and Godmother meets Child's needs, *see id.* at 64; and (10) Child wants to be adopted by Godmother. *See id.* at 65.

After our review, we discern no error of law or abuse of discretion in the trial court's conclusion that DHS established by clear and convincing evidence a basis for termination pursuant to Subsection 2511(a)(2). *See Z.N.B.*, 327 A.3d at 249. Specifically, we observe that the court did not terminate Father's rights simply due to his incarceration, and, instead, set forth the record facts supporting the conclusion that termination was appropriate in this case, where: (1) Father has demonstrated a repeated and continued incapacity, abuse, neglect, or refusal to care for Child, as evidenced by his recent threats against Child's life, Father's failure to participate in the termination hearing, and Father's failure to otherwise make meaningful progress towards his case plan goals; (2) Father's incapacity, abuse, neglect, or refusal has caused Child to be without essential parental care, control, or subsistence and that Godmother fills these voids in Child's life insofar as Father has never shared a parent-child relationship with Child during the period of his incarceration; and (3) the causes of Father's incapacity, abuse, neglect, or refusal cannot or will

not be remedied insofar as Father has acquired additional criminal convictions while incarcerated and recently threatened Child's life, both of which evidence a failure to learn from his parenting and anger management classes, Father is unlikely to be released at his earliest release date, which is in January 2027, because of his additional criminal convictions, and Father has otherwise failed to take advantage of the resources available to him while incarcerated. *See* 23 Pa.C.S. § 2511(a)(2).

With regard to termination under Subsection 2511(b), our Supreme Court has stated that the court must consider the following factors:

> [In addition to whether any parent-child bond is necessary and beneficial to the child, a court must also consider] the child's need for permanency and length of time in foster care[]; whether the child is in a pre[-]adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability. These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs. Trial courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs.

*Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023) (citations and footnotes omitted).

After review, we are satisfied that DHS established by clear and convincing evidence that termination of Father's parental rights to Child is supported under Section (b). Specifically, the factors the court considered above establish that: (1) Father and Child do not share a parent-child bond and that bond with Father is not necessary and beneficial to Child; (2) Child,

- 14 -

who was fourteen years old at the time of the hearing, has a need for permanency and has spent years in placement without appropriate parental care and control; (3) Child is positively bonded with Godmother and looks to Godmother to meet any needs; and (4) Godmother meets Child's developmental, physical, and emotional needs. *See K.T.*, 296 A.3d at 1113. Accordingly, we find that the trial court's termination of Father's parental rights pursuant to Subsection 2511(a)(2) was proper.[10]

Order and decree affirmed. Application to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2025

---

[10] Given our decision to affirm the trial court's termination decree, any challenge to the goal change order is moot. *See In re D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020).